No. 31,841

W. H. KEMBLE, *Appellee,* v. D. G. HANSEN, *Appellant.*

(37 P. 2d 1003)

Opinion filed December 8, 1934.

*T. D. Relihan* and *A. W. Relihan,* both of Smith Center, for the appellant.

*W. S. Rice, Miles Elson* and *J. T. Reed,* all of Smith Center, for the appellee.

The opinion of the court was delivered by

BURCH, J.: The action was one by a landowner to recover damages for trespass. A demurrer was sustained to a portion of the answer, and defendant appeals.

Plaintiff resides in Bristol, Tenn., and owns land in Norton county, Kansas. Leonard Lovejoy, of Almena, looked after some of plaintiff's affairs locally. Defendant was a road-building contractor, and the petition alleged defendant entered, without privilege to do so, on a tract of plaintiff's land, opened a gravel pit, and removed gravel and sand.

The answer pleaded several defenses. One defense was that defendant entered and appropriated the gravel and sand pursuant to a written lease to him, executed by Lovejoy on behalf of plaintiff. A letter from Lovejoy to plaintiff and plaintiff's reply were pleaded as conferring authority on Lovejoy to execute the lease. The letters were also pleaded as showing a contract between plaintiff and defendant, pursuant to which defendant acted. A motion to strike from the answer the defenses based on the correspondence was treated as a demurrer, and, as indicated, the demurrer was sustained.

The letters follow:

Lovejoy to Kemble, December 9, 1931:

"There is a party here with a contract for graveling a stretch of highway that may want to buy the gravel rights from you on the Lewis forty. If they decide they want to use this pit, they will give $100 per year for two years, and will agree not to disturb any of the tilled land. They have made' tests and find plenty of gravel, but will have to remove from eight to fourteen feet of dirt off the vein before it is available. This will make them move at least a yard of dirt for each yard of gravel they get, or you could get more rental. They will have to have right of entry and exit, but this will not disturb the tilled land, and it may not be necessary to even disturb the grass land, as the gravel seems to be mostly in the bed of that dry creek, but it might be necessary to strip off some of the grass if the supply in the creek should not be sufficient for their needs. If they conclude they can use this, they will probably wire you before this letter arrives, but can probably wait until you get it for a reply. They state if the supply shows sufficient they could probably go ahead longer with this contract at the same rate, but that would be a matter for later consideration.

"If they decide they want this I will send you a night letter, and you can reply by wire as soon as this letter is at hand."

Kemble to Lovejoy, December 12, 1931:

"With reference to the sandpit, I will be very glad to rent this on the basis you have named, but of course I would expect to draw up a contract protecting me and my rights in the matter. If they have a contract of their own, will you please pass on it and send it to me when convenient?"

On December 16, 1931, Lovejoy executed a lease of the untilled land for production of sand and gravel for two years for $125 per year, payable in advance. The terms of the lease are not presently material. The lease was signed as follows:

"D. G. Hansen, Second Party.
W. H. Kemble, by Leonard Lovejoy, First Party."

It is quite manifest Lovejoy was not authorized to execute a written lease. Kemble said he would expect to draft his own lease. Whether he would sign it or would send it to Lovejoy to be signed was not stated. If the proposed lessee had a form of his own, Lovejoy was to pass on it, and forward it to Kemble. Whether Kemble would then sign it or would send it to Lovejoy to be signed was not stated. Whether Kemble drafted the instrument or accepted a submitted form, authority was not conferred on Lovejoy to execute the instrument on behalf of Kemble.

Lovejoy did not transmit to Kemble an offer by Hansen. While some terms had been discussed between Lovejoy and Hansen, Hansen had not even decided whether he desired to lease the land.

Kemble made no offer to be transmitted to Hansen by Lovejoy. Kemble would be glad to lease the land on the basis of the terms spoken of by Lovejoy, but something more was necessary. The condition was not simply that a written memorial should be made of what had been discussed. Kemble made it clear that if Hansen decided he desired to lease the land, the letting would be on terms protecting Kemble and his rights, incorporated in a writing which Kemble himself would prepare. Kemble's letter furnished no basis for an inference he would accept a form lease submitted by Hansen and passed on by Lovejoy, whatever its terms. If there was to be a contract the provisions would be those contained in an instrument Kemble would draw.

"The matter may be put in this way: If the parties indicate that the expected document is to be a mere 'memorial' of operative facts already existing, its nonexistence does not prevent those facts from having their normal legal operation. What that operation is must be determined largely by oral testimony, or by preliminary or only partially complete writings. If the parties indicate that the expected document is to be the exclusive operative

consummation of the negotiation, their preceding communications will not be operative as offer or acceptance." (Restatement, Contracts, § 26, Comment b.)

In this instance, whether there was offer and acceptance depended on the two letters. Oral testimony could not aid them. There was no contract independently of the instrument Lovejoy signed, and he was not authorized to bind Kemble by that instrument.

The judgment of the district court is affirmed.